

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Geo. W. Cox,
State Health Officer,
Austin, Texas.

Dear Sir:

Opinion No. O-1767
Re: The State Board of Health does not possess the statutory authority to forbid the public exhibition of a fourteen year old preserved specimen of infant abnormality known as the "mummified turtle baby".

The public exhibition of a preserved mummified infant, which was born with an epidermis of plate-like scales and lived three days, does not contravene the civil or criminal statutes of Texas.

A permit for the exhibition of a specimen of infantile aberration designated the "mummified turtle baby" is not required by law.

A preserved unique specimen of human malformation is the subject of property rights in this State.

Under Art. 4477, Rule 58a, Vernon's Annotated Civil Statutes, the State Board of Health, acting through the state and local registrar of Vital Statistics, has the authority to grant or refuse a permit for the preservation or mummification of a monstrous birth.

You have requested us to advise you concerning the jurisdiction of the State Board of Health in respect

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Geo. W. Cox, Page 2

to the public exhibition of the preserved body of what is known as the "mummified turtle baby" and also the proper authorities to which the matter should be referred in the absence of control in your department.

The facts, as set forth in your letter, are unusual, and the question raised is of first impression in this state insofar as we have been able to ascertain.

In 1926 a child with abnormal skin was born to a negro couple in Port Arthur, Texas. The epidermis consisted of plate-like scales. The infant died three days after birth. Its body was "mummified" instead of buried by the parents. The mummy was then loaned for exhibition purposes to an individual who has now asked the Texas State Board of Health for information concerning the procuring of a permit for "an educational exhibit" of the human specimen.

Your questions are worded as follows:

" * * * *, the question arises as to whether we have authority to forbid the exhibition of this specimen, *. * * "

"We would appreciate, in the second place, your opinion as to where such matters should be referred in the future for permit to exhibit."

It is probable that we are confronted here with an extreme case of ichthyosis or fish-skin disease at birth. See "Diseases of the Skin" by Stelwagon, p. 531; "The 'Alligator Boy' - A Case of Ichthyosis" by G. H. Fox, Jour. Cutan. Dis., 1884, p. 97; and "The 'Man Fish' of Tennessee" by Yandell, Louisville Med. News, 1878, p. 262.

At the outset we wish to point out that there is neither case nor statutory law relating to a preserved ichthyosis specimen. But for legal purposes our subject matter falls naturally into the same category as monstrous births, and we have been able to find a few rare cases dealing with examples of teratology.

DeLee, in the sixth edition of his volume "Principles and Practices of Obstetrics", on page 568, states:

Hon. Geo. W. Cox, Page 3

> "a child born with a deformity so marked that it interferes with the general or local development of the body is called a monster."

At common law it was a misdemeanor to show a monstrous birth for money. HERRING v. WALROUND, 2 Chan. Cas. 110.

But it has been held that when a person has by the lawful exercise of work or skill so dealt with a human body or part of a human body in his lawful possession that it has acquired some attributes differentiating it from a mere corpse awaiting burial, he acquires a right to retain possession of it, at least as against any person not entitled to have it delivered to him for the purpose of burial, but subject to any positive law which forbids its retention under the particular circumstances. DOODEWARD v. SPENCE, 6 Aust. C. L. R. 406.

In the Doodeward V. Spence opinion, Chief Justice Griffith of the High Court of Australia, wrote:

> "It is idle to contend in these days that the possession of a mummy, or of a prepared skeleton, or of a skull, or other parts of a human body, is necessarily unlawful; if it is, the many valuable collections of anatomical and pathological specimens or preparations formed and maintained by scientific bodies, were formed and are maintained in violation of the law."

Upon the authority of the above decisions we are of the opinion that the ownership and possession of a well-preserved specimen of one of nature's human freaks would not be contrary to the spirit of the common law. On the other hand, it appears that at common law the exhibition of a preserved monstrous birth or human freak would be prohibited as contra bonos mores and an unlawful infringement of public health and public decency.

The law of this country relating to the rights of property or possession in dead bodies is summarized in 17 CORPUS JURIS, at page 1137. We quote briefly:

Hon. Geo. W. Cox, page 4

"Rights in a dead body exist only for the purpose of burial and preservation of the remains after burial and, in the absence of statute, it cannot be disposed of for any other purpose. However, a corpse may possess such peculiar attributes as to justify its preservation on scientific or other grounds, * * *" (Underscoring ours)

The court of Criminal Appeals of Texas in the case of GRAY v. STATE, 1114 S. W. 635, stated what we accept as the law of this state on property rights in dead bodies, in the following language:

"While the body is not property in the usually recognized sense of the word, yet it may be considered as a sort of quasi property, to which certain persons may have rights, as they have duties to perform toward it, and the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the same condition in which death leaves it."

It is logical to assume that the Texas Courts would recognize property rights in a preserved specimen of human malformation.

Turning from a consideration of the common law to the statutory law of Texas, it is apparent that the ever-changing notions of public decency are indicated by the failure of the Legislature to enact a law remotely applicable to the present situation.

A careful investigation of the civil statutes of Texas does not disclose any law pertaining to the exhibition of the preserved body of a human freak.

We have examined the statutes relating to the jurisdiction, power and duties of the Anatomical Board of the State, Articles 4583 through 4590, as amended, Vernon's Annotated Civil Statutes, and find that they have no bearing on this question.

The same is true of the State Board of Embalming

statutes, Articles 4576 through 4582, as amended, Vernon's Annotated Civil Statutes, which set out the powers and duties of the Board.

The question of the authority of the State Board of Health over the exhibition of the so-called "turtle baby" has necessitated an analysis of Rules 34a through 57 of Article 4477, as amended, Vernon's Annotated Civil Statutes, which pertain to vital statistics. The Vital Statistic provisions of Article 4477 are the nearest approach we have to positive law in this state governing the peculiar situation we are considering.

The "turtle baby" was born in the year 1926, according to the facts. At that time Rules 34 through 57, Article 4477, Revised Civil Statutes, 1925, (Acts 1911, 32nd Leg., ch. 95, and Acts 1917, 35th Leg., ch. 129), were in full force and effect.

Rules 34 to 57 were repealed by Acts 1927, 40th Leg., 1st C. S., p. 116, ch. 41, § 24.

Rules 34a through 57, Article 4477, Vernon's Annotated Civil Statutes, as amended, (Acts 1927, p. 116 and Acts 1939, H. B. 614) are now the portion of the sanitary code relating to vital statistics.

At the time of the birth and death of the "turtle baby", Rules 34, 35 and 40 read as follows:

"Rule 34. To report births. - All physicians, surgeons or accoucheurs (midwives) who may attend at the birth of a child, or, in the absence of such attendance, either parent of the child, shall report the fact, together with all statistical data relating thereto, within five days from time of the birth, to the city or county registrar as hereinafter provided for."

"Rule 35. Undertakers to report deaths.- Every person acting as undertaker shall file with the proper registrar a certificate of death and all persons furnishing a coffin or box in which to bury the dead shall be deemed undertakers."

"Rule 40. Disposing of body. - The body of any person whose death occurs within, or which may be found dead within, this State shall not be interred or deposited in a vault, or tomb, or cremated, or otherwise disposed of, or removed from or into any registration district, or be held temporarily pending further disposition, for a period of more than seventy-two hours after death, unless a permit for burial, removal or other disposition thereof shall have been properly issued by the registrar of the city, county or precinct in which the death occurred or the body was found. This article shall not apply to counties of less than two thousand inhabitants. • • • " (Underscoring ours).

There is no information submitted as to whether the birth and death of the "turtle baby" were reported to the proper registrar in compliance with the terms of the old Rules 34 and 35, above quoted. Furthermore, it is not disclosed whether or not in compliance with Rule 40 a permit "for other disposition" of the body was obtained in view of the fact that it was held for more than 72 hours after death.

It is useless to speculate upon these acts which may or may not have occurred back in 1926, but it is our opinion that under the original Rule 40 and the present Rule 38a (dead bodies) - the latter worded substantially like the repealed Rule 40 - before the body of a child born a monster could be legally preserved a permit would have to be obtained from the local registrar.

The phrase "other disposition" is broad enough to cover preservation for medical or educational purposes of a monstrous birth.

We call attention to the present Rule 38a, Article 4477, Vernon's Annotated Civil Statutes, which reads as follows:

"Rule 38a. Dead bodies.- Sec. 5. That the body of any person whose death occurs in this state, or which shall be found dead therein,

Hon. Geo. W. Cox, Page 7

> shall not be interred, deposited in a vault
> or tomb, cremated <u>or otherwise disposed of,</u>
> <u>or removed from or into any registration dis-</u>
> trict, or be temporarily held pending further
> disposition more than 72 hours after death,
> <u>unless a permit for burial, removal, or other</u>
> <u>disposition thereof shall have been properly</u>
> <u>issued by the local registrar of the registra-</u>
> <u>tion district in which the death occurred or</u>
> <u>the body was found.</u> * * * " (Underscoring ours)

We emphasize the fact that in Texas the old Rule
40 and the present Rule 38a of Article 4477 are statutory
authority to the effect that other disposition of a
corpse than burial may be made.

Under this section the State Board of Health
and the Registrar of Vital Statistics have authority
over the disposition of the bodies of monstrous births,
and may issue or refuse to issue a permit for the pre-
servation of specimens.

As we have previously indicated, we do not know
what, if any, permit was obtained in respect to the dis-
position of the body of the "turtle baby" in 1928.

In the present instance the failure of the
parents who mummified the so-called "turtle baby" to
procure such a permit in 1928 would not be material since
the property rights of the owner of the preserved speci-
men cannot be disturbed at this time.

We are not passing in this opinion upon the
question of whether or not the parents of the "turtle
baby" are guilty of having violated Article 781, Penal
Code of Texas, (Acts 1911, p. 173; Acts 1917, p. 332)
which was in effect at the time the "turtle baby" was
born, died and was preserved. Said penal provision
reads as follows:

> "Any person who shall violate any rule of
> the Sanitary Code of this State relating to
> vital statistics, or who shall fail to perform
> any duty imposed on him by said rules herein
> referred to, shall be fined not less than ten

nor more than one hundred dollars. Whoever
shall falsely or fraudulently furnish any in-
formation for the purpose of making an incor-
rect record of a birth or death shall be con-
fined in the penitentiary not less than one
nor more than two years."

Article 4477, Rules 34a through 57, does not
confer any jurisdiction in the Board of Health over the
exhibition of a preserved specimen of human malformation.

Rules 77 through 86, Article 4477, Vernon's An-
notated Civil Statutes, relate to the transportation of
dead bodies, and have no application upon the present
situation.

Although the exhibition of a monstrous birth
constituted a misdemeanor at common law, there is no
positive law in the criminal statutes of Texas which
would forbid such a public display.

Article 1 of the Penal Code, Vernon's Annotated
Criminal Statutes, provides:

"The design of enacting this Code is to
define in plain language every offense against
the laws of this State, and affix to each of-
fense its proper punishment."

Article 3, Penal Code, reads:

"In order that the system of penal law in
force in this State may be complete within it-
self, and that no system of foreign laws, writ-
ten or unwritten, may be appealed to, it is
declared that no person shall be punished for
any act or omission, unless the same is made
a penal offense, and a penalty is affixed
thereto by the written law of this State."

The Penal Code does not make the exhibition of
a specimen of human monstrosity, or a freak of nature a
penal offense, or provide a penalty therefor. The code
is exclusive of the common law, and a misdemeanor at

common law is not a misdemeanor in Texas today unless
"defined" in the Code.

Article 526, Penal Code, dealing with indecent
publications and exposures, provides:

"If any person shall make, publish or print
any indecent and obscene print, picture or
written composition manifestly designed to
corrupt the morals of youth, or shall design-
edly make any obscene and indecent exhibition
of his own or the person of another in public,
he shall be fined not exceeding one hundred
($100.00) dollars." (Underscoring ours).

It has been held that the words "obscene and
indecent exhibition" as used in Article 526 means an ex-
posure of the parts of the person commonly considered as
private. TUCKER v. STATE, 13 S. W. 1004. This statute
would not apply to the exhibition of a mummified abnor-
mal baby, since such an exhibition would not be "obscene
and indecent" within the meaning of the state.

Commenting upon the meaning of the word "inde-
cency" the court in the case of REDD v. STATE, 7 Ga., A.
575, 580; 67 S. W. 709, stated:

" * * * The times, - the prevailing state
of public morality at the particular period, -
more largely than any other one thing determine
what the decency and indecency of that particu-
lar day and generaltion shall be. Many things
regarded (by law as well as by secular opinion)
a hundred years ago as being indecent are not
so regarded now; but on the other hand, the
present age has developed decencies and indecen-
cies unknown to or observed by our forefathers."

Article 530, Penal Code, relating to traffic
in dead bodies, provides:

"No school, college, physician or surgeon
shall be allowed or permitted to receive any
dead human body until bond shall have been giv-
en as provided by law, and whosoever shall sell

or buy any such bodies _or in any way traffic in the same_, or shall transmit or convey, or procure to be transmitted or conveyed, any said body to any place outside the state shall be fined not exceeding two hundred ($200.00) dollars or be imprisoned not exceeding two years in jail." (Underscoring ours)

The exhibition of a preserved specimen of a monstrous birth is not tantamount to trafficking in dead bodies within the prohibition of the Penal Statute.

The word "traffic" has a perfectly clear and definite meaning of its own at law.

Bouvier's Law Dictionary, Rawles' 3rd edition, defines traffic as follows:

"Commerce; trade; sale or exchange of merchandise, bills, money and the like. The passing of goods or commodities from one person to another for an equivalent in goods or money; and a trafficker is one who traffics or a trader, a merchant." SENIOR v. RATTERMAN, 44 Ohio State, 673, 11 N. E. 321."

See following cases for similar definitions of "traffic":

PEOPLE v. DUNFORD, 270 N.Y. 17, 100 N.E. 433, 434; FINE v. MORAN, 77 So. 533, 538, 74 Fla. 417; ROBIN GOODFELLOW (D. C., Wash.) 20 Fed. (2d) 924,925; PEOPLE v. ROLANDELLI, 160 N.Y.S. 766, 767.

It is extremely doubtful that the exhibition of a well-preserved specimen of human malformation would amount to an act injurious to the public health, so as to constitute a public nuisance, although this would be a question of fact in the last analysis.

Article 698, Penal Code, provides:

"Whoever shall carry on any trade, business or occupation, injurious to the health of those who reside in the vicinity, or suffer

Hon. Geo. W. Cox, Page 11

any substance which has that effect to remain or premises in his possession, shall be fined not less than ten ($10.00) nor more than one hundred ($100.00) dollars. Each day is a seperate offense."

The exhibition of the "turtle baby" would not amount to an act prima facie injurious to the public health.

Mummies, skeletons, and skulls are subjects of property, and are not confined to the medical class-room and laboratory. They are displayed to the public in museums and anatomical schools. The "turtle baby" is a mummy, according to the facts submitted, and its exhibition would not violate any statute of the state of Texas that we have been able to discover.

A study of all the case and statutory authorities reveals that neither under the common law or under the statutes of the state of Texas is the possession of a preserved specimen of human aberration against the law. Furthermore, while at common law there is authority to the effect that the public exhibition of a preserved monstrous birth would amount to a misdemeanor and be prohibited, the statutory law of this state, civil or criminal, does not prohibit the exhibition of a mummified specimen of infant abnormality.

We are not in a position to say whether such an exhibition may or may not have an educational value to the public or serve the purpose of advancing scientific medical learning. If the peculiar attribute of the two-headed baby in the Doodeward v. Spence case justified its preservation on scientific grounds, then the "turtle baby" no doubt has an equal scientific anatomical value. Its preservation and exhibition in the twentieth century cannot arbitrarily or lightly be said to constitute a public nuisance, impair the public health or offend the contemporary sense of public decency, irrespective of the lack of statutory law on the subject. Besides, the specimen with which we are concerned is approximately fourteen years old, and represents a definite piece of property, the rights of ownership and possession of which the law will protect.

In answer to your specific questions, we wish to advise that it is our opinion that the State Board of Health does not possess the statutory authority to forbid the public exhibition of a fourteen-year old preserved specimen of infant abnormality known as the "mummified turtle baby". It is our opinion that the public exhibition of a preserved "mummified" infant which was born with an epidermis of plate-like scaliness and which lived three days, does not contravene the civil or criminal statutes of Texas. It is our further opinion that a permit for an exhibition of a specimen of infantile aberration designated the "mummified turtle baby" is not required by law. We are of the opinion that a preserved unique specimen of human malformation is the subject of property rights in this state. Finally, it is our opinion that under Article 4477, Rule 38a, Vernon's Annotated Civil Statutes, the State Board of Health, acting through the state and local registrar of Vital Statistics, has the authority to grant or refuse a permit for the preservation or mummification of a monstrous birth.

We have not been informed as to the manner in which the "turtle baby" will be exhibited to the public, but such an exhibition will in all probability be subject to the occupation tax laws of this state. See Article 7047, Sections 22 to 29, Vernon's Annotated Civil Statutes.

Trusting that we have fully and satisfactorily answered your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Dick Stout_
Dick Stout
Assistant

DS:ob

APPROVED FEB 19, 1940

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY